**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **NATIONAL TRUST INSURANCE COMPANY and FCCI INSURANCE COMPANY,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**MACON MACHINE, INC.; MIDSTATE STEEL, INC.; SYLVIA ELLIS, individually and as Special Administrator for the Estate of DON ELLIS, deceased; FREDDIE GRAHAM; AND JANET GRAHAM,**<br><br>**Defendants.** | **)** | **CIVIL ACTION FILE NO.** |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs National Trust Insurance Company ("NTIC") and FCCI Insurance Company ("FCCI") file this Complaint for Declaratory Judgment.

**PARTIES**

1.

NTIC, a plaintiff herein, is organized under the laws of Indiana with its principal place of business in Indiana. For purposes of federal court jurisdiction, therefore, NTIC is a citizen of Indiana.

2.

FCCI, a plaintiff herein, is organized under the laws of Florida with its principal place of business in Florida. For purposes of federal court jurisdiction, therefore, FCCI, is a citizen of Florida.

3.

Macon Machine, Inc. ("Macon Machine"), a defendant herein, is a corporation organized under the laws of Georgia with a principal place of business in Georgia. For purposes of federal court jurisdiction, therefore, Macon Machine is a citizen of Georgia. Macon Machine may be served through its registered agent Margaret Zschiesche, 313 Walnut Street, Macon, Georgia 31201.

4.

Midstate Steel, Inc. ("Midstate"), a defendant herein, is a corporation organized under the laws of Georgia with a principal place of business in Georgia. For purposes of federal court jurisdiction, therefore, Midstate is a citizen of Georgia. Midstate may be served through its registered agent Margaret Zschiesche, 313 Walnut Street, Macon, Georgia 31201.

5.

Sylvia Ellis, a defendant herein, is a citizen of Georgia both individually and as Special Administrator of the Estate of Don Ellis as the decedent was a citizen of

Georgia at the time of his death. Ellis may be served at 125 Lacy Driggers Road, Glennville, Georgia 30427.

6.

Freddie Graham and Janet Graham, defendants herein, are citizens of Georgia. They may each be served at 3924 Easy Street, Macon, Georgia 31204.

**JURISDICTION AND VENUE**

7.

There is complete diversity of citizenship between plaintiffs who are citizens of Indiana and Florida and defendants who are citizens of Georgia.

8.

The amount in controversy exceeds $75,000.

9.

This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

10.

There is an actual case or controversy between the parties regarding Plaintiffs' coverage obligations under insurance policies issued in Georgia. 28 U.S.C. § 2201.

11.

Venue is proper in the Macon Division of the Middle District of Georgia where one or more defendants reside, where the insurance policies were delivered,

and where the incidents giving rise to the liability claims occurred. 28 U.S.C. § 1391(b); L.R. 3.4.

**UNDERLYING LAWSUITS**

12.

Two liability lawsuits underlie this Complaint for Declaratory Judgment, one brought by Sylvia Ellis in Illinois and the other in Georgia by Freddie and Janet Graham (collectively the "Underlying Lawsuits").

**Ellis Lawsuit**

13.

Sylvia Ellis ("Ellis") sued Macon Machine in the Circuit Court of the Third Judicial Circuit of Madison County, Illinois, Civil Action 22LA001110 ("Ellis Lawsuit") alleging that her spouse, decedent Don Ellis, was exposed to asbestos during various period of his life "from certain products he was working with and around, which were manufactured, sold, distributed or installed" by the certain defendants that include Macon Machine. She claims that Don Ellis' exposure to asbestos caused him to develop mesothelioma which led to his death. A true copy of the Ellis Lawsuit is attached as Exhibit A.

14.

Ellis does not allege when Don Ellis was exposed to products associated with Macon Machine, what the products were, or when resulting injuries occurred.

15.

Ellis, both individually and on behalf of Don Ellis' estate, seeks to recover compensatory damages from Macon Machine under theory of negligence as well both compensatory and punitive damages under a theory of willful and wanton conduct. In addition, Ellis seeks to recover compensatory damages for loss of companionship, society and services of Don Ellis.

**Graham Lawsuit**

16.

Freddie and Janet Graham sued Midstate in the State Court of Macon-Bibb County, Civil Action 23-SCCV-095397 ("Graham Lawsuit") alleging that Freddie Graham contracted lung cancer from exposure to asbestos over a period that spanned several decades. A true copy of the Graham Lawsuit is attached as Exhibit B.

17.

In an affidavit attached to the complaint in the Graham Lawsuit, Freddie. Graham he was exposed to asbestos by a "steel fabricator" manufactured by Midstate from "Approx. 1970-1990."

18.

In the same affidavit, Freddie Graham identifies Midstate as a contractor that he worked for "out of local 26 Boiler makers, Savannah, GA" during an unspecified period of time when he was exposed to asbestos.

19.

Freddie Graham seeks to recover compensatory damages under theories of negligence and strict liability as well as punitive damages.

20.

Janet Graham, as the spouse of Freddie Graham, seeks to recover compensatory damages for the loss of affection, society, comfort, support, consortium and companionship of Freddie Graham as a result of the "wrongful and tortuous [sic] acts of the Defendants." She seeks punitive damages as well.

## INSURANCE POLICY PROVISIONS

21.

This declaratory judgment action concerns the application of Commercial Package Policies and Commercial Liability Umbrella Policies ("Umbrella Policies") issued by NTIC and/or FCCI that include Midstate and/or Macon Machine as named insureds.

### Commercial Package Policies

22.

NTIC issued the following Commercial Package Polices for the periods indicated below, true copies of which are attached as Exhibits C to M:

CPP0013729-1 – April 1, 2012 to April 1, 2013
CPP0013729-2 – April 1, 2013 to April 1, 2014
CPP0013729-3 – April 1, 2014 to April 1, 2015

| | |
|---|---|
| CPP0013729-4 – | April 1, 2015 to April 1, 2016 |
| CPP0013729-5 – | April 1, 2016 to April 1, 2017 |
| CPP0013729-6 – | April 1, 2017 to April 1, 2018 |
| CPP0013729-7 – | April 1, 2018 to April 1, 2019 |
| CPP100043173-01 – | April 1, 2019 to April 1, 2020 |
| CPP100043173-02 – | April 1, 2020 to April 1, 2021 |
| CPP100043173-03 – | April 1, 2021 to April 1, 2022 |
| CPP100076317-00 – | April 1, 2022 to April 1, 2023 |

23.

The Commercial Package Policies include a Commercial General Liability Coverage Form ("CGL Form") that applies to claims for damages that the "insured becomes legally obligated to pay because of 'bodily injury'." Among other things, the "bodily injury" must occur during the period of the policy and be caused by an "occurrence."

24.

The term "bodily injury" is defined within the CGL Forms as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

25.

The term "occurrence" is defined within the CGL Forms as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

26.

Each Commercial Package Policy contains an endorsement entitled "TOTAL POLLUTION EXCLUSION ENDORSEMENT" that modifies the CGL Forms in pertinent part to exclude coverage for "'[b]odily injury' …which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time."

27.

The term "pollutant" is defined within the CGL Forms as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

28.

Each Commercial Package Policy contains an endorsement entitled "TOTAL ASBESTOS EXCLUSION ENDORSEMENT**"** that modifies the CGL Forms in pertinent part to exclude coverage for:

> Any damages or remedies whatsoever, in whatever manner defined or undefined in this policy, sought under any legal theory whatsoever, which would not have occurred in whole or in party but for the actual, alleged or threatened ingestion, inhalation, absorption of, discharge, dispersal, seepage, migration, release, escape or exposure to, or presence of asbestos in any form emanating from any source at any time.

29.

Each CGL Form in the Commercial Package Policies contains the following exclusions for claims related to employment:

**d. Workers Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An 'employee' of the insured arising out of and in the course of:
   a. Employed by the insured; or
   b. Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that 'employee' as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**Umbrella Policies**

30.

NTIC issued the following Umbrella Policies for the periods indicated below, true copies of which are attached as Exhibits N to W:

UMB0014035-1 – April 1, 2012 to April 1, 2013

UMB0014035-2 – April 1, 2013 to April 1, 2014

UMB0014035-4 – April 1, 2015 to April 1, 2016

UMB0014035-5 – April 1, 2016 to April 1, 2017

UMB0014035-6 – April 1, 2017 to April 1, 2018

UMB100023735-01 – April 1, 2018 to April 1, 2019
UMB100023735-02 – April 1, 2019 to April 1, 2020
UMB100023735-03 – April 1, 2020 to April 1, 2021
UMB100023735-04 – April 1, 2021 to April 1, 2022
UMB100076319-00 – April 1, 2022 to April 1, 2023

31.

FCCI issued Umbrella Policy UMB0014035-3 for the period April 1, 2014 to April 1, 2015, a true copy of which is attached as Exhibit X.

32.

The Umbrella Policies include a Commercial Liability Umbrella Coverage Form ("CLU Form") that covers "the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury'."

33.

The term "ultimate net loss" is defined in the CLU Form as the amount that the insured owes in excess of the "retained limit" which is defined as "the available limits of 'underlying insurance' scheduled in the declarations or the 'self-insured retention', whichever applies."

34.

The "underlying insurance" in the CLU Form means the Commercial Package Policy that was issued for the same policy period.

35.

Substantively, each CLU Form in the Umbrella Policies apply to "bodily injury" that occurs during the policy period and is caused by an "occurrence" with the quoted terms defined in identical manner as quoted above in the CGL Forms in the Commercial Package Policies.

36.

Each CLU Form in the Umbrella Policies contains an exclusion for "[b]odily injury … which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." The term "pollutants" is defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

37.

In addition, with the exception of policies UMB100023735-01 and UMB100023735-02 that were issued for the periods April 1, 2018 to April 1, 2019 and April 1, 2019 to April 1, 2020, respectively, the Umbrella Policies contain the same "Total Asbestos Exclusion Endorsement" quoted above that modifies the insurance provided in the CLU Form.

38.

Each CLU Form in the Umbrella Policies contains the following "Employer's Liability" exclusion:

> "Bodily injury" to:
>
> (1) An 'employee' of the insured arising out of and in the course of:
>   a. Employed by the insured; or
>   b. Performing duties related to the conduct of the insured's business; or
>
> (2) The spouse, child, parent, brother or sister of that 'employee' as a consequence of Paragraph (1) above.
>
> This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.
>
> This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.
>
> This exclusion does not apply to liability assumed by the insured under an "insured contract".
>
> With respect to injury arising out of a "covered auto", this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits. For the purposes of this insurance, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.
>
> This exclusion does not apply to the extent that valid "underlying insurance" for the employer's liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance.

**COUNT ONE – MIDSTATE IS NOT AN INSURED UNDER COMMERCIAL PACKAGE POLICY CPP0013729-1**

39.

Plaintiffs incorporate by reference each factual allegation in the preceding paragraphs of this Complaint as if set forth herein.

40.

Commercial Package Policy CPP0013729-1 was issued by NTIC to Macon Machine as the sole named insured for the period April 1, 2012 to April 1, 2013.

41.

Midstate is neither a named insured nor qualify as an "insured" as that term is defined in the CGL form of Commercial Package Policy CPP0013729-1.

42.

WHEREFORE, the Court should declare that NTIC does not owe coverage to Midstate, including a defense, under Commercial Package Policy CPP0013729-1 for the claims asserted in the Underlying Lawsuits.

**COUNT TWO – THE POLLUTION EXCLUSION APPLIES TO THE CLAIMS IN THE UNDERLYING LAWSUITS**

43.

Plaintiffs incorporate by reference each factual allegation in the preceding paragraphs of this Complaint as if set forth herein.

44.

The injuries and damages alleged in the Underlying Lawsuits would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of asbestos.

45.

Asbestos is a "pollutant" as that term is defined in the CGL Form of the Commercial Package Policies and the CLU Form of the Umbrella Policies.

46.

The TOTAL POLLUTION EXCLUSION ENDORSEMENT in each of the Commercial Package Policies that modifies the CGL Form applies to all claims the Underlying Lawsuits.

47.

The pollution exclusion in each CLU Form of the Umbrella Policies applies to all claims in the Underlying Lawsuits.

48.

WHEREFORE, the Court should declare that Plaintiffs do not owe coverage to Macon Machine or to Midstate, including a defense, for the claims asserted in the Underlying Lawsuits.

**COUNT THREE – THE TOTAL ASBESTOS EXCLUSION APPLIES TO THE CLAIMS IN THE UNDERLYING LAWSUITS**

49.

Plaintiffs incorporate by reference each factual allegation in the preceding paragraphs of this Complaint as if set forth herein.

50.

The injuries and damages alleged in the Underlying Lawsuits would not have occurred in whole or in part but for the actual, alleged or threatened ingestion, inhalation, absorption of, discharge, dispersal, seepage, migration, release, escape or exposure to, or presence of asbestos in any form emanating from any source at any time.

51.

WHEREFORE, pursuant to the TOTAL ASBESTOS EXCLUSION, the Court should declare that:

(a) Plaintiffs do not owe coverage to Macon Machine or to Midstate, including a defense, for the claims asserted in the Underlying Lawsuits under any of the Commercial Package Policies; and

(b) Plaintiffs do not owe coverage to Macon Machine or to Midstate, including a defense, under the following Umbrella Policies:

UMB0014035-1 – April 1, 2012 to April 1, 2013
UMB0014035-2 – April 1, 2013 to April 1, 2014

| | |
|---|---|
| UMB10014035-3 – | April 1, 2014 to April 1, 2015 |
| UMB0014035-4 – | April 1, 2015 to April 1, 2016 |
| UMB0014035-5 – | April 1, 2016 to April 1, 2017 |
| UMB0014035-6 – | April 1, 2017 to April 1, 2018 |
| UMB100023735-03 – | April 1, 2020 to April 1, 2021 |
| UMB100023735-04 – | April 1, 2021 to April 1, 2022 |
| UMB100076319-00 – | April 1, 2022 to April 1, 2023 |

## COUNT FOUR – THE EMPLOYMENT EXCLUSIONS APPLY TO THE CLAIMS IN THE GRAHAM LAWSUIT

52.

Plaintiffs incorporate by reference each factual allegation in the preceding paragraphs of this Complaint as if set forth herein.

53.

Midstate's liability in the Graham Lawsuit is based on Freddie Graham's alleged exposure to asbestos while he was employed by Midstate.

54.

The CGL Forms in each of the Commercial Package Policies and the CLU Forms in each of the Umbrella Policies exclude coverage for injuries sustained to an employee of Midstate.

55.

WHEREFORE, the Court should declare that Plaintiffs do not owe coverage to Macon Machine or to Midstate, including a defense, for the claims asserted in the Graham Lawsuit.

**COUNT FIVE – JANET GRAHAM AND SYLVIA ELLIS DO NOT SEEK DAMAGES FOR "BODILY INJURY"**

56.

Plaintiffs incorporate by reference each factual allegation in the preceding paragraphs of this Complaint as if set forth herein.

57.

The damages claimed by Janet Graham and Sylvia Ellis, individually, are for the loss of the affection, society, comfort, support, consortium, companionship, and/or services of their spouse.

58.

The loss of the affection, society, comfort, support, consortium, companionship, and/or services of a spouse is not "bodily injury" as that term is defined in each CGL Form in the Commercial Package Policies or in each CLU Form in the Umbrella Policies.

59.

WHEREFORE, the Court should declare that Plaintiffs do not owe coverage to Macon Machine or to Midstate, including a defense, for the claims asserted by Janet Graham and Sylvia Ellis in the Underlying Lawsuits.

**PRAYER FOR RELIEF**

60.

Based on all the terms, conditions, and exclusions, in the Policy (whether or not expressly mentioned or identified in this Complaint), as well as under relevant legal principles and public policy concerns, Plaintiffs are entitled to a declaration that they do not owe coverage, including a duty to defend or indemnify, to Midstate or Macon Machine for the claims asserted in the Underlying Lawsuits.

**PLAINTIFFS DEMAND A JURY ON ALL ISSUES SO TRIABLE.**

**FREEMAN MATHIS & GARY, LLP**

*/s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com

*Counsel for Plaintiffs*

100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)